FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

LISA K. SCULL,

           Plaintiff,

    vs.

COMMISSIONER OF SOCIAL

SECURITY,

           Defendant.

No. 4:17-cv-05012-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion (ECF No. 15) and grants Defendant's Motion (ECF No. 16).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on February 25, 2013, alleging a disability onset date of November 4, 2004. Tr. 237-53. Benefits were denied initially, Tr. 97-136, 175-82, and upon reconsideration. Tr. 137-174, 187-95. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on June 10, 2015. Tr. 44-96. On July 9, 2015, the ALJ denied Plaintiff's claims. Tr. 13-43.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 4, 2004. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: carpal tunnel syndrome, bilateral shoulder

impairment, degenerative disk disease, obesity, anxiety disorder, and affective

disorder. Tr. 18. At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment. Tr. 20. The ALJ then concluded that Plaintiff has

the RFC to:

> lift and carry ten pounds frequently and twenty pounds occasionally. She
> can stand and/or walk for one hour at a time, after which she needed to sit
> for a few minutes (while she continues to work in a sitting position). In this
> manner, she can stand and/or walk for a total of four hours in an eight-hour
> workday. She can sit for a total of six hours in an eight-hour workday. She
> can occasionally reach overhead bilaterally. She can frequently reach in
> other directions bilaterally. Below shoulder-level, she can frequent push and
> pull with her upper extremities. She can occasionally push and pull with her
> lower extremities. She can occasionally climb ramps and stairs. She cannot
> climb ladders, rope, or scaffolding. She can frequently stoop and balance.
> She can occasionally kneel and crouch. She cannot crawl. She must avoid
> concentrated exposure to wetness, extreme cold, vibration, and hazards
> (such as heights and dangerous machinery). She has sufficient concentration
> to understand, remember, and carry out simple repetitive tasks in in two-
> hour increments. With usual and customary breaks, she can maintain
> adequate pace with simple repetitive tasks. She can work in coordination
> with a small group of coworkers, numbering three or less. She can work in
> the same room with an unlimited number of coworkers, without coordination
> with these individuals. She can have superficial and occasional contact with
> the general public.[] She can occasionally interact with supervisors and can
> respond appropriately to criticism.

Tr. 22-23 (footnote omitted). At step four, the ALJ found Plaintiff was unable to

perform any past relevant work. Tr. 33. At step five, the ALJ found that

considering Plaintiff's age, education, work experience, and RFC, there are other

jobs that exist in significant numbers in the national economy that the Plaintiff can

perform such as officer helper, production assembler, and order caller.  Tr. 34-35.

The ALJ concluded Plaintiff has not been under a disability, as defined in the

Social Security Act, since November 4, 2004 through the date of the decision.  Tr.

35.

On December 20, 2016, the Appeals Council denied review, Tr. 1-8, making

the ALJ's decision the Commissioner's final decision for purposes of judicial

review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises

the following issues for this Court's review:

1. Whether the ALJ properly determined Plaintiff's severe impairments at step

   two; and

2. Whether the ALJ properly determined Plaintiff's residual functional capacity

   and posed a proper hypothetical to the vocational expert.

*See* ECF No. 15 at 4, 11.

ORDER - 8

# DISCUSSION

## A. Step Two

Plaintiff contends the ALJ should have found at step two that she suffers from a severe left knee impairment. ECF No. 15 at 7-9. The ALJ found the record contained conflicting evidence that failed to establish Plaintiff suffers from a severe knee impairment. Tr. 19.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Plaintiff has the burden to show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities, which include: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§

404.1521(b), 920(c); Social Security Ruling (SSR) 85-28, 1985 WL 56856 (Jan. 1, 1985); *Smolen*, 80 F.3d at 1290. "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.' " *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96–3p, 1996 WL 374181 (July 2, 1996)).

A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96-4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or description of the impact of" the impairment).

Here, the ALJ resolved step two in Plaintiff's favor, finding six of Plaintiff's impairments were severe including carpal tunnel syndrome, bilateral shoulder impairment, degenerative disk disease, obesity, anxiety disorder, and affective disorder. Tr. 18. However, the ALJ found that Plaintiff's left knee impairment, seizures, and somatoform disorder were all non-severe impairments. Tr. 19-20.

The ALJ separately analyzed Plaintiff's knee impairment, describing the medical evidence in detail. Tr. 19. The ALJ gave multiple reasons for finding the knee impairment is non-severe. First, the ALJ remarked that the medical record did not refer to prolonged use of an assistive device, though the ALJ also acknowledged Plaintiff's use of a walker after a 2004 motor vehicle accident and Plaintiff's testimony that she has continued to use a cane occasionally. Tr. 19. The ALJ further found that the left medial meniscus tear was resolved with arthroscopic surgery in 2005 and while receiving medical care (including physical therapy) in 2006 she repeatedly reported her left knee was doing "fairly well." Tr. 19. In 2007, Plaintiff reported her left knee injury from the motor vehicle accident had resolved. *Id.* Finally, the ALJ found that the left lateral meniscus tear had resolved itself within less than twelve months of its discovery. Tr. 19.

Plaintiff does not challenge any of these findings or contend the ALJ failed to consider medical records. Instead, Plaintiff alleges that her diagnosis of a medial meniscus tear in 2005 and her testimony that she uses a cane on occasion are sufficient to demonstrate her knee impairment is severe. ECF No. 15 at 8. The Court concludes the ALJ's step two analysis was sufficient and the finding that Plaintiff's knee impairment is non-severe is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2008) (citation omitted). Accordingly, substantial evidence supports the ALJ's decision at step two. *See Webb*, 433 F.3d at 686.

Additionally, the parties concede that once step two is resolved in Plaintiff's favor, harmful error only occurs only if the ALJ fails to properly consider all impairments, both severe and non-severe, in the RFC analysis. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (recognizing that harmless error applies in the social security context); *Burch v. Barnhart*, 400 F.3d 676, 682-684 (9th Cir. 2006) (holding that the ALJ did not commit reversible error by not considering the claimant's obesity or finding it severe at step two because the ALJ proceeded with the sequential analysis and adequately considered the claimant's obesity in making his RFC determination).

As explained below, Plaintiff fails to show that the ALJ erred in determining Plaintiff's RFC at step four.

**B. RFC and Hypothetical**

Plaintiff contends the ALJ's formulation of the RFC, and the resulting hypothetical posed to the vocational expert, failed to consider the impact of her knee impairment, obesity, and limitations of being off-task, absenteeism, and no more than occasional reaching in all directions. ECF No. 15 at 9-11; ECF No. 17 at 2-4.

In determining RFC, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe. 42 U.S.C. §§ 423(d) (2)(B), (5)(B). "An ALJ must propound a hypothetical to a [vocational expert] that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). "It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock*, 240 F.3d at 1165. Here, this Court finds the RFC included the full extent of Plaintiff's limitations supported by substantial evidence in the record.

### 1. Knee impairment

Plaintiff contends the ALJ failed to consider her left knee impairment in formulating the RFC. In support of this assertion, Plaintiff argues "[t]his is evident in the fact that the ALJ only limited [Plaintiff] to light work with other non-exertional limitations. Such a knee impairment in combination with the other severe impairments surely results in [] further diminished RFC findings." ECF No. 17 at 2. Plaintiff fails to develop this portion of her argument. She does not

identify any additional functional limitations as a result of her knee impairment or cite to any evidence in the 1600-page record in support of her position.  It is not this Court's duty to comb the record in search of arguable support for Plaintiff's contention.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir.2014) (finding that a reviewing court cannot "comb the administrative record to find specific conflicts").  As a result, the Court may decline to consider this argument.  *Carmickle*, 533 F.3d at 1161 n.2 ("[I]ssues not argued with specificity in briefing will not be addressed.").

Despite Plaintiff's general contention to the contrary, it appears that the ALJ incorporated all of her physical limitations into the RFC.  The ALJ provided a thorough summary of the medical evidence pertaining to Plaintiff's knee impairment, including the objective evidence and examination findings after Plaintiff underwent arthroscopic surgery in 2005.  Tr. 19 (citing Tr. 522-25 (2006 progress notes stating Plaintiff is going to physical therapy, "doing well," and has full range of motion in the knee and stability in all planes); Tr. 848 ("She did have some significant lower extremity symptoms initially…but those have since resolved."); Tr. 1129-31 (MRI of left knee dated February 2, 2012); Tr. 1441-42 (April 3, 2013 treatment note from Andrea Barrett, M.D. noting "Left knee subjectively worse since cessation of vitamin D supplement.  Clinically she does not appear to have a lateral meniscus tear or patellar instability and tweaking the

saphenous nerve can cause a reflex inhibition of quad contraction which will make her knee collapse.")). After consideration of the record in its entirety, the ALJ found numerous physical limitations in formulating the RFC and incorporated them into the assessment of Plaintiff's ability to perform light work, her ability to stand or walk, and the assessment of Plaintiff's postural limitations. Tr. 22-23. The RFC is consistent with the 2013 assessment of Dale Thuline, M.D., Tr. 157-74, which the ALJ accorded significant weight and Plaintiff does not contest. Tr. 23. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

The Court concludes Plaintiff has not demonstrated the ALJ erred in regards to any limitations related to Plaintiff's knee impairment.

*2. Obesity*

With respect to Plaintiff's obesity, SSR 02–1p states that "[an ALJ] may not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." SSR 02–1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).

The ALJ appropriately considered any possible limitations resulting from this impairment in the RFC finding. The ALJ's decision set forth Plaintiff's testimony that her weight fluctuated between 350 and 500 pounds and "constantly strained her back, joints, and muscles." Tr. 23. The ALJ also noted other medical evidence documenting Plaintiff's weight, Tr. 26, and her ability to ascend stairs quickly without any difficulty, despite a weight of 300 pounds. Tr. 24 (citing Tr. 359). The ALJ concluded that "[t]he claimant's overall medical studies and examination findings are inconsistent with severe deficits in her physical functioning, even with the effects of her obesity." Tr. 24. Among a number of restrictions, the RFC limited Plaintiff to light work with simple repetitive tasks, standing or walking for an hour at time, and never crawling or climbing ladders, rope or scaffolding. Tr. 23.

Plaintiff has not identified any information from any treatment provider describing how her obesity limits her functioning more restrictively than determined by the ALJ. Plaintiff suggests that her weight sufficed to alert the ALJ of the need for a more restrictive limitations than occasional kneeling, crouching, and climbing stairs. ECF No. 17 at 3. However, the ALJ cannot assume Plaintiff's obesity has more limiting functional effects than are supported by the record. Plaintiff does not identify any error in the ALJ's evaluation of the medical evidence, which consisted of a detailed description of the evidence of record and

numerous professional assessments of the Plaintiff's physical functioning, four of which the ALJ accorded significant weight.  Tr. 31-32 (crediting Larry Iversen, M.D., Dennis Byam, D.C., Raymond Berg, M.D., and Dr. Thuline).  Both Dr. Thuline and physical therapist Kirk Holle, whom the ALJ assigned some weight, opined Plaintiff could occasionally crouch, kneel, and climb stairs.  Tr. 30 (citing Tr. 356-64); Tr. 32 (citing Tr. 151).  Substantial evidence supports the ALJ's RFC determination and the ALJ properly considered Plaintiff's obesity in accordance with SSR 02-1p.  *See Burch*, 400 F.3d at 683 (the plaintiff has burden to provide evidence establishing how her obesity limits her functioning).

*3. Off-task Time or Absenteeism*

Plaintiff contends "[t] result of [Plaintiff's] physical and mental health impairments substantiate the need for a finding of 'off-task' time and absences from work."  ECF No. 15 at 10.

Plaintiff provides no support for this assertion, but notes that in 2013, examining psychologist Manuel Gomes, Ph.D. opined Plaintiff would need to start with part-time work and a mental source statement dated November 30, 2013 from Kishore Varada, PA-C, Tr. 1523-25, found marked and severe limitations in Plaintiff's ability to perform at a consistent pace.  ECF No. 15 at 10.  However, the ALJ concluded "[w]ith usual and customary breaks, she can maintain adequate pace with simple repetitive tasks."  Tr. 23.  In making this finding, the ALJ

considered both of opinions of Dr. Gomes and Mr. Varada and assigned them minimal weight. Tr. 32-33. The ALJ rejected Dr. Gomes and Mr. Varada's assessments based upon inconsistency with examination notes, heavy reliance upon subjective reporting, and incompatibility with Plaintiff's activities and the longitudinal examination findings. Tr. 32-33. Plaintiff does not challenge these determinations or any aspect of the ALJ's discussion of the relevant medical evidence. These assessments are thus based on substantial evidence and cannot be reweighed by this Court. Further, the ALJ gave significant weight to the opinions of Dr. Fligstein and Dr. Nelson, who opined Plaintiff could maintain concentration, persistence, and pace with at least semi-skilled tasks, Tr. 33, and the RFC limited the Plaintiff to simple repetitive tasks. Plaintiff does not identify any error in the ALJ's evaluation of these medical opinions. Accordingly, the Court concludes the ALJ properly exercised her discretion not to include limitations for being off task and absent from work in Plaintiff's RFC.

*4. Reaching Limitation*

Plaintiff also contends, for the first time in the Reply, that the ALJ's formulation of the RFC is not supported by substantial evidence because it did not include a limitation to no more than occasional reaching in any direction. ECF No. 17 at 3. The RFC limited Plaintiff to occasional reaching overhead bilaterally,

frequent reaching in other directions bilaterally, and below shoulder-level, frequent

pushing and pulling with her upper extremities.[1]  Tr. 23.

Plaintiff fails to develop this argument and raised it for the first time in the

Reply, therefore the Court may decline to consider it.  *Carmickle*, 533 F.3d at 1161

n.2 ("[I]ssues not argued with specificity in briefing will not be addressed.").

Plaintiff does not address the medical evidence and the ALJ's findings related to

Plaintiff's reaching limitation.  In the decision, the ALJ explained the evidence

relied upon in formulating the RFC and supporting the finding that "[a]lthough she

has ongoing upper extremity impairment, the claimant's longitudinal examination

findings indicate normal functioning in her arms."  Tr. 26.  The ALJ thoroughly

summarized the relevant medical evidence after Plaintiff's shoulder surgery.  Tr.

26-27.  Moreover, in regards to Plaintiff's ability to reach, the ALJ adopted the

opinion of Dr. Thuline and rejected the opinion of Andrea Barrett, M.D. based on

the claimant's routine displays of normal or nearly-normal range of motion in her

extremities, without motor or sensory defects.  Tr. 31-32.  Plaintiff does not

_____

[1]  All of the jobs identified by the vocational expert (VE) required frequent

reaching outward.  Tr. 92.  The VE testified that if an individual with the same

RFC "was limited to occasional reaching in all directions that would eliminate

those jobs."  Tr. 92, 93-94.

challenge any aspect of the ALJ's discussion of the medical evidence regarding her reaching limitation or the weight assigned to the foregoing opinions. Accordingly, the Court finds the RFC's limitations on reaching are supported by substantial evidence.

Overall, the Court concludes the RFC is supported by substantial evidence in the record.

*5. Hypothetical*

Plaintiff contends the ALJ's errors in formulating the RFC resulted in the ALJ propounding an incomplete hypothetical to the vocational expert. ECF No. 15 at 11 (stating the hypothetical was incomplete because it "failed to include an indication of how her obesity will affect her RFC, how much time Ms. Scull would be 'off-task' and how many days she would be absent from work as a result of her impairments."). However, the ALJ's hypothetical contained the limitations that the ALJ found credible and supported by substantial evidence in the record; thus, the ALJ properly relied on the testimony by the vocational expert at steps four and five. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error. **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

1      2. Defendant's Motion for Summary Judgment (ECF No. 16) is

2  **GRANTED**.

3      The District Court Executive is directed to file this Order, enter

4  **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and CLOSE

5  THE FILE.

6      DATED March 16, 2018.

7                          *s/Mary K. Dimke*
                          MARY K. DIMKE

8            UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 21